### M. J. NALL V. THE STATE.

No. 19040.   Delivered October 20, 1937.

The opinion states the case.

*J. D. Pickett,* of Palestine, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is removing mortgaged property out of the county in which it was located at the time the mortgage was given; the punishment, confinement in the penitentiary for two years.

Appellant bought an automobile from Broughton-Sandefur Motor Company of Palestine on the 5th of August, 1935. He made the initial payment by transferring his car to the company, and executed a mortgage to said company to secure the deferred payment of $310. According to the testimony of the State, he stated to the representatives of the company that he expected to raise a crop in Anderson County and further that he would use the automobile for pleasure. There was a provision in the mortgage that appellant would not remove the car from the county without the written consent of the mortgagee.

From the date appellant took the car away from the place of business of the seller he made no payments thereon. According to the testimony of the State, after the first installment was past due some ten days a member of the automobile firm went to appellant and requested the payment. Appellant stated to him that he had sent his payment to the finance company. However, it developed that no payment had been made. Later the finance company retransferred appellant's note to the Broughton-Sandefur Company with the statement that they would not handle it. Appellant was not seen again by any representative of the automobile company until about the first of October, 1936, although diligent search had been made for him by the sheriff of Anderson County, who had in his possession a writ of sequestration. Representatives of the automobile company furnished the highway number and motor and serial numbers to members of the state highway patrol in an effort to locate the car. The same information was given to the sheriffs of some of the counties in the East Texas oil field.

Appellant lived with his mother-in-law, who, according to the State's testimony, informed the representatives of the motor company on several occasions that she did not know the whereabouts of appellant. On one occasion she stated to them that he was working for a Mr. Cobb in Houston, Texas. In the Spring of 1936, a man giving his name as Cobb came to Palestine and advised representatives of the company that appellant was working for him in Houston. He said appellant had his automobile with him and was using it in his business. Cobb advised the company that he would see that appellant paid five

dollars a week on the car if they would permit him to keep it in Houston. This agreement was finally entered into. However, no payments were ever made to the company. Representatives of the company called on appellant's wife in an effort to recover the car. She told them that she knew where it was but would not surrender it. About sixty days before the trial the car was delivered to the company. It was in bad condition and was sold by the company for fifty dollars.

According to appellant's version, he told representatives of the company when he purchased the car that he expected to use it in his business as a traveling salesman and it would be necessary for him to remove it from the county. They gave their consent and he thereafter, in the prosecution of his business, drove the car into several counties. Eventually he went to Houston and was employed as salesman by Mr. Cobb. He gave Cobb $150, with instructions to go to Palestine and settle with the company. Five or six months prior to the time he gave the money to Cobb he had learned that the sheriff had a writ of sequestration for the automobile. He thought Mr. Cobb had settled with the company and did not learn that the money had not been paid to said company until after he was arrested. At the time of the trial he did not know where Cobb was.

The State introduced testimony rebutting appellant's contention that the company representatives told him at the time he purchased the car he might remove it from Anderson County.

We have not undertaken to set out in detail all of the testimony adduced upon the trial.

In his motion for new trial appellant alleged that one of the jurors entertained a prejudice against him which influenced him in voting for conviction and further influenced him in voting against giving him a suspended sentence. Upon hearing evidence upon the motion juror Petri, who was alleged to be prejudiced, denied that he made a statement to the effect that appellant and his wife lived together as man and wife two or three years before they were married. He said, however, that after the jury had returned its verdict and been discharged he stated to Mr. Woltz, one of the jurors, that he had known appellant and his wife, and that he had seen them "running together" before they were married. Moreover, he stated that prior to her marriage to appellant she had been the wife of Vernon Browley. However, he testified that at the time he saw appellant and his wife going with each other she was not Browley's wife. The juror Woltz testified that the juror in question had not stated to him that appellant and his wife had

lived together prior to their marriage. Juror Caskey testified that after they had finally reached a verdict the juror Petri made a statement in the jury room to the effect that appellant and his wife had lived together prior to their marriage. Other jurors testified that they did not hear the statement. One of the jurors testified that Mr. Petri stated in the jury room, after the verdict had been finally reached, that he had known appellant's wife prior to the time she married appellant and that she had been married before. He said: "He didn't say anything further than that he just knew this woman and that he discovered after he got on the case that he had known her." The juror Petri testified further that in considering the case he thought appellant should be given a suspended sentence. He said: "I was the last man to change his mind on the issue as to whether it should be a suspended sentence or a sentence in the penitentiary." In the state of the record we are constrained to hold that the trial judge was warranted in concluding that the juror was not prejudiced.

It was also shown on the hearing of the motion that the juror Petri had been engaged in business and that appellant had traded with him. It appears that sometime in 1933 appellant had executed a check to the juror and his partner, which had been dishonored. Further, it appears that the check had been indorsed by A. J. Dennis, an employee of the juror, and deposited in the bank. In 1934 the juror sold his interest in the business to his partner, Mr. Sealy. After the sale Mr. Sealy and his employee Dennis turned the check over to the sheriff to collect. Mr. Petri testified that he did not recall the check, as he had sold his interest in the business shortly after it was given. Again, he testified that Dennis and Mr. Sealy handled the check and that he did not have anything to do with it. We think the testimony of the juror warranted the conclusion of the trial judge that he had no knowledge of the check until the hearing of the motion for new trial.

It is appellant's contention that the evidence is insufficient to support the conviction, his position being that the automobile company entered into a new contract with him when they agreed that he might retain the car in Houston, Texas. It is observed that appellant purchased the car in August, 1935, and it was not until the Spring of 1936 that a man giving his name as Cobb came to Palestine and requested that appellant be permitted to keep the car in Houston, with the understanding that he pay five dollars a week to the company. The question for the jury was whether appellant intended to defraud the com-

150 

pany when he removed the car from the county of Anderson. If the State's testimony was to be believed appellant had removed the car from Anderson County with intent to defraud several months prior to the alleged subsequent agreement with the company. Said company had made diligent search for him in an effort to either collect the payments or recover the car. That the company, in an effort to secure its money, had agreed with appellant's alleged agent Cobb that appellant might retain the car in Houston did not, in our opinion, remove appellant from the operation of Art. 1558, P. C., in view of the fact that the proof warranted the conclusion that appellant removed the car with intent to defraud some seven or eight months before the subsequent agreement was entered into. We quote said Art. 1558, in part, as follows:

"If any person has given or shall hereafter give any mortgage, deed of trust or other lien, in writing, upon any person or movable property or growing crop of farm produce, and shall remove the same or any part thereof out of the State, or out of the county in which it was located at the time the mortgage or lien was created, or shall sell or otherwise dispose of the same with intent to defraud the person having such lien, either originally or by transfer, he shall be confined in the penitentiary for not less than two nor more than five years."

A careful examination of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.